**No. 24-12793-JJ**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

BENJAMIN BLANCHARD
VONN CAPEL
*Appellants,*

v.

PASCO COUNTY,
PASCO COUNTY PROPERTY APPRAISER OFFICE
PASCO COUNTY TAX COLLECTOR OFFICE,
MIKE FASANO AND MIKE WELLS
*(In their Individual and Official Capacity),*
*Appellees*

Appeal from the United States District Court
for the Middle District of Florida, Tampa Division

No. 8:24-cv-00352-WFJ-CPT

---

## APPELLANTS' PETITION FOR REHEARING
## AND REHEARING EN BANC PER RULE 40

---

Benjamin Blanchard
Vonn Capel
3201 Anata Dr, Zephyrhills FL, 33541
bennyblanch@protonmail.com
(Deaf, email only please)

—

*Blanchard et al, v. Pasco County et al*
*No. 24-12793-JJ*

**Certificate of Interested Persons**
**And Corporate Disclosure Statement**

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1 and 26.1-2, the

petitioner hereby certifies that the following is a list of persons and entities who

have an interest in the outcome of this case:

**Blanchard, Benjamin**, plaintiff/appellant.

**Capel, Vonn,** plaintiff/appellant.

**Fasano, Mike**, in his individual and official capacity as Pasco County Tax

Collector, defendant/appellee.

**Frederick T. Reeves, P.A.**, counsel for defendants/appellees, Mike Fasano, in his

individual and official capacity as Pasco County Tax Collector, and Pasco County

Tax Collector Office.

**Hale, Robert C.**, counsel for defendant/appellee, Pasco County, Florida.

**Jung, William F.**, United States District Court Judge, Middle District of Florida,

Tampa Division.

**Levy Law Firm,** counsel for defendants/appellees, Mike Wells, in his individual

and official capacity as Pasco County Property Appraiser and Pasco County

Property Appraiser Office.

**Levy, Loren,** attorney with The Levy Law Firm, counsel for defendants/appellees,

**Pasco County Attorney Office**, counsel for defendant/appellee, Pasco County,

Florida.

**Pasco County, Florida**, a political subdivision of the State of Florida, defendant/

appellee.

**Pasco County Property Appraiser Office**, defendant/appellee.

**Pasco County Tax Collector Office**, defendant/appellee.

**Reeves**, **Frederick T.**, attorney with Frederick T. Reeves, P.A., counsel for

defendants/appellees, Mike Fasano, in his individual and official capacity as Pasco

County Tax Collector and the Pasco County Tax Collector Office.

**Rodkey, Sydney E.**, attorney with The Levy Law Firm, counsel for defendants/

appellees, Mike Wells, in his individual and official capacity as Pasco County

Property Appraiser, and Pasco County Property Appraiser Office.

**Tuite, Christopher P.**, United States Magistrate Judge, United States District

Court Middle District of Florida, Tampa Division.

**Wells, Mike**, in his individual and official capacity as Pasco County Property

Appraiser, defendant/appellee.

Respectfully Submitted


By: /s/ Benjamin Blanchard
     /s/ Vonn Capel

Benjamin Blanchard,
Vonn Capel,
*Pro Se*
3201 Anata Dr,
Zephyrhills, FL 33541

~Intentionally left blank~

Blanchard *et al*, v. Pasco County *et al,*
*No. 24-12793-JJ*

**TABLE OF CONTENTS**

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement……….C-1-3

Table of Contents………………………………………………….………………….i

Table of Citations.....................................................................................................ii

Statement in Support of Rehearing….……………………………………….……..1

Argument…………………………………………………………………….……..3

I.      The Panel's Jurisdictional Dismissal Conflicts with SEC v. Jarkesy………..3

II.     The Panel's Reasoning Conflicts with Binding Eleventh Circuit
       Authority in Behr v. Campbell……………………………………………4

III.    The Panel Decision Expands the TIA and Comity to Pre-Assessment
       Challenges Contrary to Law……………………………………………5

IV.    The Panel's Presumption of Ownership-Based Taxation Contradicts the
       Supreme Court's Constitutional Tax Classification Doctrine…………….. 10

V.     Florida's Ownership-Based Enforcement Constitutes an Unconstitutional
       Taking……………………………………………………………………15

Conclusion …………………………………………………………………..17

Certificate Of Compliance ………………………………………………..18

Certificate Of Service..……………………………………………...…..18

# TABLE OF CITATIONS

## Cases

*Axon Enterprises v. FTC,*
    598 U.S. ___ (2023)…………………………………………………9, 17

*Behr v. Campbell,*
    *No:* 18-12842  (11th Cir. 2021*)..…..………….…………..…….1, 4, 5

*Brushaber v. Union Pacific R. Co.,*
    240 U.S. 1 (1916)…………….…………….……...…………..1, 11-14

*CSX Transp., Inc. v. Georgia State Bd. of Equalization,*
    552 U.S. 9 (2007)…………………………………...………..1, 8, 9

*Direct Marketing Ass'n v. Brohl,*
    *575 U.S. 1 (2015)*…………………….…………….……………1, 5, 6

*Dubin v. United States,*
    599 U.S. ___ (2023*)..……………….…………1, 6-8, 11, 14, 17

*Hibbs v. Winn,*
    *542 U.S. 88 (2004)*…..………………………………..……1, 6, 7

*Lynch vs. Household Finance Corp.,*
    405 U.S. 538 (1972)………………………………………..16

*Mccallen Co. v. Massachusetts,*
    279 U.S. 620 (1929)…………………….……………1, 11, 14

*Moody v. NetChoice,*
    603 U.S. at ___ (2023)…………………………………13

*New York State Rifle & Pistol Ass'n v. Bruen,*
    597 U.S. ___ (2022)..…………………………..1, 11, 12, 14, 15, 17

*Ohio Tax Cases,*
    232 U.S. 576 (1914) …………………………………..…1, 13,14

*SEC v. Jarkesy*,
603 US ___ (2024)..……………….....……....………1, 3, 9, 14, 17

*Stead's Executors v. Course*,
4 Cranch 403, 414 (1808)…………………………………………15

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014)………………………………………………4

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994)……………………………………………..10

*TransUnion LLC v. Ramirez*,
594 U.S. ___ (2021)………………………………………………4

*Tyler v. Hennepin County*,
598 U.S. ___ (2023)………………………………1, 2, 14, 15, 16

*Williams v. Reed*,
604 U.S. ___ (2025)………………………………………………9

*Vanhorne's Lessee v. Dorrance*,
2 U.S. 304 (1795)……………………………………………15, 16

## State Cases

*American Can Co. v. City of Tampa*,
152 Fla. 798, 14 So. 2d 203 (1943)…………………………….13

*Higgs v. Good*,
813 So. 2d 178 (Fla. Dist. Ct. App. 2002)…………………..……..9

*Owens v. Fosdick*,
153 Fla. 17, 24 (Fla. 1943)…………………………………..……13

## Statutes

28 U.S.C. § 1341……..………………………………..…………….3, 5

FL § 193.011………………………………….…………………3, 7, 13, 17

FL § 193.032 ………………………………………..……………….…..3

FL § 193.052…………………………………………..…..………..3, 7, 13, 17

FL § 194.034(1)(j) ……………………………………..…………………9

FL § 194.301 ……………………………………..…..…..6, 7, 13, 17

FL § 194.171 ……………………………………..…………………...9

FL § 196.012(4) ……………………………………..…………………12

## Constitution

Fifth Amendment
Takings Clause……………………………………………15, 16

Sixteenth Amendment…………………………………………..11

## Florida Constitution

Article I
Section 2…………………………………………………..11

Article VII
Section 1(a)…………………………………………………12

Article VII
Section 4(a)…………………………………………………12

## Authorities

Cong. Rec. 3344–45 (June 16, 1909)…………………………………8

## STATEMENT IN SUPPORT OF REHEARING
## AND REHEARING EN BANC

Pursuant to Federal Rule of Appellate Procedure 40(b)(2), Appellants respectfully seek panel rehearing and/or rehearing en banc. This case warrants review by the full Court because:

(I) The panel's opinion conflicts with multiple United States Supreme Court decisions, including *Brushaber v. Union Pacific R. Co.,* 240 U.S. 1 (1916)*; CSX Transp., Inc. v. Georgia State Bd. of Equalization,* 552 U.S. 9 (2007*); Direct Marketing Ass'n v. Brohl,* 575 U.S. 1 (2015)*; Dubin v. United States,* 599 U.S. ___ (2023*); Hibbs v. Winn,* 542 U.S. 88 (2004)*; Macallen Co. v. Massachusetts,* 279 U.S. 620 *(1929*)*; New York State Rifle & Pistol Ass'n v. Bruen,* 597 U.S. ___ (2022*); SEC v. Jarkesy,* 603 U.S. ___ (2024); *Tyler v. Hennepin County,* 598 U.S. ___ (2023)*.

(II) The panel's opinion conflicts with binding Eleventh Circuit precedent, *Behr v. Campbell*, 8 F.4th 1206 (11th Cir. 2021), by applying jurisdictional doctrines globally without parsing claim-by-claim as *Behr* requires.

(III) The panel's opinion conflicts with authoritative decisions of other circuits, including the Ninth Circuit in *Hibbs* (affirmed by SCOTUS), and potentially others interpreting *Direct Marketing* and the scope of the Tax Injunction Act where no lawful assessment has occurred or was created.

(IV) This case presents multiple questions of exceptional importance, including:

A) Whether courts may apply the Tax Injunction Act without first adjudicating taxpayer classification or if assessments factually occurred under state law;

B) Whether ownership presumptions can substitute for statutory prerequisites to taxation;

C) Whether structural challenges to classification and situs fall within Article III review when no remedy exists under state law;

D) Whether state taxation may proceed based solely on administrative presumption without situs, return, or statutory valuation.

E) Whether enforcement based solely on ownership, absent a lawful assessment or excess value retained, constitutes a per se taking under *Tyler* and violates the Takings Clause.

Rehearing and/or En banc consideration is necessary to maintain doctrinal uniformity and prevent a structurally defective rule from controlling future taxpayer classification and jurisdictional disputes.

## ARGUMENT

### I. The Panel's Jurisdictional Dismissal Conflicts with SEC v Jarkesy

The panel applied the Tax Injunction Act (TIA), 28 U.S.C. § 1341, to bar federal jurisdiction without ever reaching the two threshold questions raised in the complaint: whether Appellees had any lawful authority to assess property absent the statutory preconditions of situs and return or if an actual assessment was created. The result directly conflicts with *SEC v. Jarkesy*, 602 U.S. ___ (2024), which held "*Again, what matters is the substance of the suit, not where it is brought, who brings it, or how it is labeled.*" This case must be resolved by Article III courts and cannot be insulated by procedural doctrines.

Here, Petitioners alleged that Defendants failed to create a factual ad valorem "assessment" and lacked any legal basis to initiate such ad valorem taxation due to the absence of a situs determination, a return, or valuation under §§ 193.052, 192.032, and 193.011, Fla. Stats.

Rather than confront that structural question and color of law injury, the panel treated the complaint as if it challenged a properly assessed ad valorem tax, thereby invoking the TIA to bar judicial review. That mischaracterization conflicts with *Jarkesy,* and the core question here is not "*how much to tax*," but whether any process capable of lawfully imposing one ever commenced. The panel's omission in reaching that issue cannot be reconciled with *Jarkesy*.

Blanchard's Article III standing is not hypothetical, it is structural. As in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), each Petitioner is directly classified and exposed to enforcement under color of law, while simultaneously denied judicial review on the ground that they do not meet the state or judiciary's preferred classification. That exclusion itself is a concrete injury. Under *TransUnion LLC v. Ramirez*, 594 U.S. ___ (2021), a plaintiff suffers Article III harm when a legal violation is coupled with denial of access to redress. Here, Petitioners were subjected to property classification and tax process, but when they sought federal review of that injury, the court invoked the TIA to bar jurisdiction, without resolving the threshold statutory classification or situs of enforcement. The denial of judicial review while state action proceeds is not procedural, it is the harm.

## II. The Panel's Reasoning Conflicts with Binding Eleventh Circuit Authority in Behr v. Campbell

The panel's sweeping application of the TIA, without analyzing the statutory prerequisites of assessment or separating the color of law injury from taxpayer liability, conflicts with this Court's precedent in *Behr v. Campbell*, 8 F.4th 1206 (11th Cir. 2021). There, this Court reaffirmed that jurisdictional doctrines like *Rooker-Feldman* must be applied narrowly and claim-by-claim, not as global bars. The Court emphasized that federal courts must "*not dismiss claims simply because*

*they relate to prior state litigation*," but must distinguish whether each claim independently seeks "*review and rejection*" of a state judgment.

Here, Petitioners sought prospective relief based on structural and statutory defects occurring prior to any lawful assessment in current and preceding years, not to re-litigate or reverse a tax bill. They sought jurisdictional discovery to verify whether a lawful assessment ever occurred, not to enjoin, suspend, or restrain any ongoing enforcement. As in *Behr*, those claims are not jurisdictionally barred, but require threshold statutory and constitutional analysis. The panel's omission of that analysis, and its treatment of Petitioners' objections as indistinct from tax enforcement, creates intra-circuit conflict with binding Eleventh Circuit law.

### III. The Panel Decision Expands the TIA and Comity to Pre-Assessment Challenges Contrary to Law

### Tax Injunction Act

The Supreme Court in *Direct Marketing Ass'n v. Brohl,* 575 U.S. 1 (2015) (Reply Brief pg. 3), held that § 1341 must be narrowly construed and cannot be used to bar judicial review of preliminary or structural matters that occur before an actual assessment or collection or reviewing step:

> "*Assessment was understood as a step in the taxation process that occurred after, and was distinct from, the step of reporting information pertaining to tax liability.*"

Petitioners challenged the lack of an actual assessment and the absence of a return, situs, and income-based valuation, not the validity of a tax when correctly

imposed on a subject. They sought Jurisdictional Discovery by requesting an assessment, after it was created by its due date, but not to enjoin, suspend or restrain the assessment itself. Under *Direct Marketing*, their claims fall outside the TIA. Yet the panel treated the TRIM notice—*a levy*—as equivalent to a lawful *assessment*, disregarding the statutory valuations defined in § 193.011 and the burden of proof under § 194.301(1), Fla. Stat. This departs from *Direct Marketing*'s holding and rewrites the statute to presume taxation without statutory compliance. In *Dubin v. United States*, 599 U.S. ___ (2023), that Court further enumerated: "*Congress used [three] terms because it intended each term to have a particular, nonsuperfluous meaning."(quoting Bailey, 516 U.S. at 146)*."

Likewise, *Hibbs v. Winn*, 542 U.S. 88 (2004), rejected the notion that all tax-adjacent claims fall within the TIA's bar. It preserved federal jurisdiction for structural and constitutional claims where no assessment or liability existed:

> "*The principal objects of the TIA are taxpayers who seek federal court orders enabling them to avoid paying state taxes… This case, however, is not about a taxpayer's liability for a tax… and [plaintiffs] do not challenge any liability or assessment.*"

Petitioners here are not taxpayers resisting payment, and in fact have paid all taxes in full, under protest. They are non-liable parties (Non Taxpayers) contesting color of law injuries as the statutory prerequisites for ad valorem taxation were not met and no lawful assessment was ever created. The panel's blanket assertion that the TIA applies "regardless" of taxpayer status squarely contradicts *Hibbs*.

## Comity

The panel's invoking comity as an alternative basis for dismissal, conflicts with controlling precedent too. In *Hibbs*, the Supreme Court made clear that comity is "*more limited in scope than the TIA*" and does not bar structural constitutional claims that do not seek damages or refunds from the state treasury. Similarly, *Direct Marketing* reaffirmed that pre-assessment and informational challenges are not barred by comity because they do not interfere with tax enforcement or fiscal operations.

Petitioners here did not seek damages from the treasury, but adjudication of whether Defendant's lawfully initiated the tax process or created a valid assessment to support relief requests. The panel's use of comity as a jurisdictional shield directly contravenes both decisions and reinforces the need for rehearing.

## Statutory Construction

Moreover, the panel's omission in reviewing statutory definitions like *assessment* or *levy* before invoking either jurisdictional bar is incompatible with *Dubin*, timely raised in the supplemental authority. In *Dubin*, the Court reaffirmed that: "*Statutory interpretation must be anchored in the elements Congress defined. Courts may not rewrite or dilute the statutory text to accommodate theories not rooted in the statute itself.*"   Here, the panel presumed ad valorem taxation had lawfully commenced without first analyzing the statutory elements of '*assessment*' under §§ 193.052, 193.011 and 194.301, Fla. Stats., thereby potentially allowing

state actors to impose obligations under color of law without statutory authority. That assumption usurps the judiciary's duty to enforce statutory structure and document creation by inviting procedural shortcuts that override the rule of law.

### Appraisal Methodology

The Supreme Court in *CSX Transportation, Inc. v. Georgia State Bd. of Equalization*, 552 U.S. 9 (2007), confirmed that judicial scrutiny of state valuation methodology and procedural compliance is required, even where a state claims to act within its taxing authority: "*We do not see how a court can go about determining true market value if it may not look behind the State's choice of valuation methods.*"  *CSX* was timely raised in the supplemental authority.

Here, Petitioners introduced un-rebutted allegations, and sought jurisdictional discovery, to establish that the Appraiser never created an assessment for present and previous years. The panel should have considered these threshold defects and instead presumed a valid *assessment* from the mere issuance of a *levy* bearing a "*person or other legal entity's*" name. That presumption is irreconcilable with *CSX* and *Dubin*, which mandate a factual and legal inquiry into the statutory definitions of '*person or other legal entity,*' the embedded definitions within the valuation framework, and the process used to generate taxable value before deferring to state remedies.

## Lack of Remedy

Finally, the panel's reliance on Florida's statutory remedy under § 194.171, Fla. Stat., is misplaced, because that remedy expressly requires the filing of a return in order to contest the assessment. See § 194.034(1)(j), Fla. Stat., and *Higgs v. Good,* 813 So. 2d 178 (Fla. Dist. Ct. App. 2002), (Appeal Brief pg. 17).  If no return was filed, as Appraiser admitted in public records requests, and Petitioners sought jurisdictional discovery to prove, then the statutory remedy the panel deemed "adequate" was structurally unavailable according to valid Florida caselaw. This renders the statutory remedy the panel relied upon not merely inadequate under *CSX*, but structurally inaccessible, compelling the need for Article III review under *Jarkesy*.

As the Court recently stated in *Williams v. Reed*, 604 U.S. ___ (2025), "*you first have to exhaust the administrative process. Of course, that means that you can never challenge delays in the administrative process*." That logic applies here: when the ad valorem process and administrative remedy is initiated with a return, there is no valid administrative process to exhaust. Under *Williams*, that lack creates a structural bar to administrative remedy and mandates review.

The Supreme Court recently reaffirmed in *Axon Enterprises v. FTC*, 598 U.S. ___ (2023), judicial review is necessary where the constitutional structure of an enforcement regime is itself challenged, not merely its outcome. In *Axon*, the Court emphasized that structural claims "*are not about that order*," but rather

about "*subjection to an illegitimate proceeding, led by an illegitimate decision-maker,*" and that such harm "*is impossible to remedy once the proceeding is over*." Here, Petitioners assert a parallel injury: subjection to a tax enforcement regime that presumes liability based on ownership, contrary to both statutory preconditions and constitutional classification. Such a claim "*has nothing to do with the enforcement-related matters the [agency] regularly adjudicates*" and instead raises a threshold structural question requiring Article III review.

The panel's application of the TIA further conflicts with the framework set forth in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), reaffirmed in *Axon*. Under those decisions, district court jurisdiction cannot be displaced where (1) meaningful judicial review would otherwise be foreclosed, (2) the claims are wholly collateral to the statutory scheme, and (3) the issues lie outside the agency's expertise. All three factors apply here. Petitioners seek threshold adjudication of whether taxation ever lawfully commenced, not the amount of tax due. Their claims are constitutional and jurisdictional in nature, and thus beyond the scope of local tax officials or Florida's post-assessment remedies. Denying review here forecloses any avenue to challenge taxation that was improperly initiated, and renders Article III review structurally inaccessible.

### IV. The Panel's Presumption of Ownership-Based Taxation Contradicts the Supreme Court's Historical Tax Classification Doctrine

### Historical Intent of Taxation

Under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ___ (2022), enforcement regimes that burden constitutional rights must be justified by historical tradition. Florida's ad valorem tax system, as applied to the "*natural person*" protected under Article I, Section 2 of the Florida Constitution (a classification also susceptible to scrutiny under *Dubin*), must be evaluated against historical and constitutional foundations, particularly whether taxation arises from uniform apportionment by ownership, whether it is conditioned upon use, situs, or income as an excise tax. "*The term "natural was interposed to clarify that this provision does not apply to corporations, but only to private persons.*" (App. Brief, pg. 12 Fnt. 4)

## Taxing Property vs. Income

President William H. Taft, in his June 16, 1909[1] message to Congress proposing the Sixteenth Amendment, affirmed that "*[t]he decision of the Supreme Court in the income-tax cases deprived the National Government of a power… It is undoubtedly a power the National Government ought to have,*" but made clear that "***this is not a direct tax on property…. but the Artificial Entity's net income.***"(See App.l Brief pg 4.)  His message reflects the same constitutional taxonomy he later affirmed as a Justice in *Brushaber v. Union Pacific R. Co*., 240 U.S. 1 (1916) and as Chief Justice in *Macallen Co. v Massachusetts*, 279 U.S. 620, (1929), distinguishing between direct taxes, which must be apportioned, and excise taxes,

---

[1] Senate Congressional Record of 1909, pg. 3344-3345

which must arise from use or privilege. This distinction is central to Petitioners'
challenge to Florida's ownership-implied ad valorem enforcement scheme. Taft's
guidance as the president and chief justice are crucial to determine the taxonomical
standards under *Bruen*.

In 1845, the Legislature of Florida codified property taxation by **use** as "…
*every farmer seized and possessed of forty acres of land in his or her own right in*
*fee simple, and shall actually have in cultivation at least ten acres of the same,*
*shall hold the same free and exempt from Execution attachment or distress*[2]…"
Florida's historical taxation scheme is still evident in its modern framework, see
Article VII, Section 1(a) & Section 4(a), Fla. Const.

## Modern Taxation: Ownership vs Use

The panel presumed that ownership alone justifies ad valorem taxation and
enforcement under Florida's tax scheme. Florida statute 196.012(4) rebuts this
presumption, stating "*"Use" means the exercise of any right or power over real or*
*personal property incident to the ownership of the property.*" The presumption
directly contradicts long-settled Supreme Court doctrine defining the limits of
direct versus excise taxation. As affirmed in *Brushaber*:

> "*A tax levied on property because of its ownership is a direct tax while one*
> *levied on property because of its use is an excise tax.*"

_____

[2] http://edocs.dlis.state.fl.us/fldocs/leg/actterritory/1845.pdf, pg.23 No. VIII

This is further reinforced by Florida Supreme Court ruling in *American Can Co. v. City of Tampa,* 152 Fla. 798, 14 So. 2d 203 (1943): "*Taxation being a generic term, is construed to include both ad valorem and excise taxes.*" Florida's statutory scheme requires income-related *use* and *situs* as the triggering events for ad valorem taxation. See §§ 193.011(7), 193.052(3), 194.301(1), Fla. Stats.

Petitioners expressly alleged that no such statutory preconditions were met and that no return existed to support a lawful assessment. By allowing Defendants to effect ad valorem taxation from ownership alone, the panel endorsed a theory of taxation that is constitutionally regulated under *Brushaber.* This is inconsistent with Florida's constitutional and statutory framework, which expressly predicates ad valorem taxation on use, not mere ownership, absent a constitutional amendment. "*The first step in the proper facial analysis is to assess the state laws' scope. What activities, by what actors, do the laws prohibit or otherwise regulat*e?" *Moody v. NetChoice*, 603 U.S. at ___ (2023).

Likewise, the Supreme Court in *Ohio Tax Cases*, 232 U.S. 576 (1914), held that the taxing power must be applied consistently with the nature and classification of the tax being imposed. That Court emphasized that courts must examine the subject, basis, and jurisdictional facts of a tax to determine its validity, regardless of administrative presumption. The Florida Supreme Court further enumerated this in *Owens v. Fosdick*, 153 Fla. 17, 24 (Fla. 1943): "*The nature of a tax must be determined by its operation rather than by its terminology.*"

Furthermore, *Jarkesy's* historical counterpart *Macallen* (Reply Brief pg. 5), left the courts with a warning:

> "*These constitute special and compelling reasons why courts, in scrutinizing taxing acts like that here involved, should be acute to distinguish between an exaction which, in substance and reality, is what it pretends to be and a scheme to lay a tax upon a nontaxable subject by a deceptive use of words.*"

The panel reliance on the definition of '*assessment*' in Fla. Stat § 192.001 to validate the intent of '*assessment*' in § 193's ad valorem scheme within Florida's tax structure is the *compelling reason* the courts should follow *Dubin* and *Mccallen Co.,* and review the meanings of the statutes they used to validate the meaning of definitions in which statute. Because the panel's ruling sidesteps the constitutional taxonomy of taxation and directly conflicts with *Bruen's* historical standards under *Brushaber, Ohio Tax Cases*, and *Mccallen Co*, rehearing is necessary to prevent erosion of fundamental limitations on state taxing authority.

This doctrinal tradition culminates in *Tyler v. Hennepin County*, 598 U.S. ___ (2023) where the Supreme Court makes clear, "*The Takings Clause does not leave [property] rights to the whims of the State. And the State may not sidestep the Takings Clause by disavowing traditional property interests long recognized under state law."* The Court rejected Minnesota's attempt to reframe the forfeiture as something other than a taking, emphasizing that constitutional review requires

looking to the *"substance of the arrangement and the practical realities of the case."*

## V.    Florida's Ownership-Based Enforcement Constitutes an Unconstitutional Taking

### The Takings Clause

In *Tyler*, the Supreme Court reaffirmed that when the government enforces property taxation but retains more value than legally owed, it effects a classic taking. The State's authority to enforce taxes must be tied to valid statutory procedures and limits. Where those procedures are not followed, such as failure to assess, determine situs, or receive a return, the resulting lien or seizure is not enforcement, but appropriation under the color of law, clothed in the State's robes. That historical principle, recognized under *Bruen* and reaffirmed in *Tyler*, traces back more than two centuries and set by Chief Justice Marshall in *Stead's Executors v. Course*, 4 Cranch 403, 414 (1808),

> "*if a whole tract of land was sold when a small part of it would have been sufficient for the taxes, which at present appears to be the case, the collector unquestionably exceeded his au-thority.*"

Petitioners further emphasized the *Bruen* standard's grounding in early constitutional case law protecting property rights, citing *Vanhorne's Lessee v. Dorrance*, 2 U.S. 304 (1795), in their Amended Complaint and Appeal Brief:

> "*The constitution expressly declares, that the right of acquiring, possessing, and protecting property is natural, inherent, and unalienable. **It is a right not ex gratia** from the legislature, but ex debito from the constitution. It is sacred; for, it is further declared, that the legislature shall have no power to*

*add to, alter, abolish, or infringe any part of, the constitution.*" (Emphasis added)

Here, Petitioners allege a taking repeated over four consecutive years, and potentially into future years, in which the full value of their property, containing two separate homes, each serving as a primary residence, was subjected to enforcement under color of law. This enforcement was backed by the threat of forced sale over a measly $600 per year, despite the property's assessed value exceeding $200,000 at the time. This presents the Takings Clause in its most constitutionally acute form: the State asserts dominion over multiple households through a process untethered from lawful assessment, situs, or valuation.

Denying Blanchard or Capel standing to challenge such enforcement not only defies *Tyler's* structural limits on government power, but also violates the constitutional right first articulated in *Vanhorne's* and reaffirmed by *Lynch vs. Household Finance Corp.*, 405 U.S. 538 (1972) (see Appeal Brief pg. 14) to possess and protect one's home, a right the Supreme Court has repeatedly recognized as sacred.

*Tyler* makes clear that constitutional limits cannot be avoided through procedural labels or administrative convenience: "*The taxpayer must render unto Caesar what is Caesar's, but no more.*" Just as Minnesota could not retain a surplus by labeling it "forfeiture," the panel cannot endorse taxation based solely

on ownership absent lawful initiation under §§ 193.011, 193.052, and burden of proof per §194.301, Fla. Stat.

This Court must review the process of taxation to ensure that even the smallest iota of property is not blindly seized for Ceasar, resulting in an unconstitutional taking.

### V. Relief Sought

Petitioners respectfully request that this Court:

1.    Grant panel rehearing and/or rehearing en banc to correct the panel's failure to determine whether the ad valorem enforcement process was lawfully initiated under Florida statutory law;

2.    Vacate the panel opinion to the extent it applies the Tax Injunction Act or comity doctrine without resolving the threshold statutory and constitutional questions raised;

3.    Remand the case for adjudication of whether Respondents lawfully initiated the tax enforcement process under §§ 193.052, 193.011, in order to meet 194.301, Fla. Stat.'s, burden of proof and whether Petitioners were properly classified as taxpayers subject to ad valorem obligations.

4. Ensure the panel decision aligns with controlling Supreme Court doctrine as recently clarified in *Jarkesy*, *Dubin*, *Axon*, *Tyler*, and *Bruen*.

Petitioners do not seek monetary damages or retrospective relief at this stage, but request a judicial determination as to whether the enforcement was

initiated under lawful statutory authority, and whether federal review is required to prevent ongoing constitutional injury under color of law.

Accordingly, rehearing or rehearing en banc should be granted.

Respectfully Submitted,

Benjamin Blanchard                    Vonn Capel

/S/  Benjamin Blanchard              /S/  Vonn Capel

3201 Anata Dr.
Zephyrhills FL 33541
bennyblanch@protonmail.com
Email only (Deaf/HOH)                June 2nd, 2025

## CERTIFICATE OF COMPLIANCE

1. The pertinent parts of this brief contains 3,832 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced, 14-point serif typeface.

## CERTIFICATE OF SERVICE

I hereby certify that on June 2nd, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I further certify that appellees' counsel are registered CM/ECF users and that service will be accomplished by the CM/ECF system.